# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00415-CR

**Terry Bradshaw, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-09-300688, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a week-long trial, a jury convicted Terry Bradshaw of the first-degree felony offense of continuous sexual abuse of a young child and, after finding an enhancement paragraph true, assessed punishment at fifty-three years in prison. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2011).[1] Bradshaw challenges his conviction in two issues, asserting that the evidence was legally insufficient to sustain his conviction and that the district court deprived him of an impartial jury by denying his motion for mistrial. We will affirm the district court's judgment.

## BACKGROUND

During the trial below, the jury heard evidence that Bradshaw committed multiple acts of sexual abuse against his stepdaughter R.P. when she was between the ages of seven and eight.

---

[1] Because recent amendments to the penal code and code of criminal procedure did not change the substance of the statutes relevant to this appeal, we cite to their current version.

The evidence included testimony from R.P.'s family members, social services personnel, and R.P. herself, who was nine years old at the time of trial.

The evidence is graphic in nature, but Bradshaw's challenge to its sufficiency necessitates that we describe the testimony. R.P. testified that the assaults occurred in the house that Bradshaw shared with her, three of her sisters, and her mother.[2] When asked specifically about an assault that occurred in her home after church on Sunday, March 22, 2009, R.P. testified that she was in a restroom when Bradshaw walked in, closed the door, pulled down his pants, and told her "to suck his middle part." Using an anatomically correct doll, R.P. identified Bradshaw's sexual organ as his "middle part." R.P. stated that she did what Bradshaw told her to do by touching her mouth to his "middle part," which felt "weird," and after she stopped "yellow stuff" came out that Bradshaw put on a towel. R.P. also testified that after she left the bathroom, she saw her sister and told her sister what Bradshaw made her do. R.P. stated that she would not have said anything if her sister had not asked because Bradshaw said that "if I told anyone he would kill me, and my mom, and my family."

R.P. further testified that the next day, a Child Protective Services worker took her from school to another place where she talked to a lady and told her what Bradshaw had done. In addition to the bathroom incident that was the subject of the investigation, R.P. told the interviewer that while in her sister's bedroom, Bradshaw "put his middle part in [her] bottom." R.P. testified that when this happened she was unclothed and lying down on her stomach, with a towel between

---

[2] The record reflects that Bradshaw began residing with the family in February 2007. The record also reflects that when R.P. made her outcry, her mother had two other children who did not reside with the family and was eight months pregnant with Bradshaw's child.

2

her and the bed, and the same yellow stuff came from Bradshaw's middle part. R.P. was unable to remember at trial how many times this occurred or if it happened more than thirty days before the bathroom incident, and she struggled to answer questions about the assaults during her cross-examination; however, she did testify that Bradshaw had put his "middle part" between the "cheeks" of her bottom on different days and that this happened more than once.

R.P.'s older sister, who was eleven at the time of trial, testified about the March 22, 2009 bathroom incident. She remembered calling out for R.P. but being unable to find her. When she went to use the restroom and the door would not open, she looked under the door and saw R.P.'s feet and Bradshaw's work shoes. Later, she saw Bradshaw walk from the direction of the bathroom to go outside the house, then she saw R.P. also walking from the direction of the bathroom. She asked R.P. what she was doing in there, and R.P. recounted the incident. The sister testified that what R.P. told her happened in the bathroom with Bradshaw was the same thing that R.P. told their cousin "Pit" that afternoon.

Ronald "Pit" Campbell, R.P.'s adult cousin, testified that while driving on March 22, 2009, he saw R.P. and two of her sisters wearing backpacks and walking from their house. He stopped and asked where the girls were going, and when they said they were going to his father's house, Pit offered to drive them there. In the car, R.P. told him "Terry made [her] suck his male part." When the girls told Pit that their older sister remained at the house, he drove back to get her. After Pit and the girls arrived at his parents' house and explained what happened, Pit's mother called police.

Maria Chavira, a forensic interviewer with the Center for Child Protection, testified that she interviewed R.P. the day after her outcry and that R.P. told her about incidents—beginning

3

when R.P. said she was seven years old—in which Bradshaw "put his middle part in her bottom." Chavira recalled R.P. saying that Bradshaw instructed her to get on a pile of clothes on the bed and remove her pants, after which Bradshaw removed his underwear, "put his middle part in her bottom," "moved up and down," "stopped when yellow stuff came out," and told her to wipe it from between her legs. Chavira noted that the end of this factual description from R.P. was distinct from the bathroom incident, in which R.P. said that the "yellow stuff" went on a towel. R.P. told Chavira that one of the incidents happened while one sister was at piano lessons, her other sisters were gone, and her mother was at work. Chavira also recalled R.P. saying that Bradshaw told her "not to tell." Chavira acknowledged that R.P. said that the bedroom incident happened at 1:30 and the bathroom incident happened at 2:30, but Chavira thought R.P. misunderstood a question asking her to tell "about the time" or "about when" Bradshaw committed the certain act that occurred in the bathroom. Chavira further testified that she would not have asked an eight-year-old to provide the "actual clock time" because some children that age have difficulty telling the exact time when the event took place, and Chavira opined that R.P.'s use of those time references was "insignificant considering her age."

The jury also heard from Laurinda Acosta, a special investigator program director for Child Protective Services, who testified that she spoke to R.P. at school the day after R.P.'s outcry. Acosta testified that R.P. told her the abuse "had been happening for months." Acosta also testified that she observed R.P.'s forensic interview during which R.P. described the allegations in detail, including steps Bradshaw took preparing the bed, sounds he made, the appearance of his sexual organ, and the taste that R.P. associated with the sexual abuse that occurred in the bathroom. Acosta opined that these details constituted a "significant outcry of sexual abuse." She recalled R.P. saying that Bradshaw had been putting his "middle part in her bottom" since she was seven years old.

4

She also recalled R.P. stating that her stepfather told her not to tell anybody. Acosta further testified that R.P.'s mother, who appeared irritated and angry during her conversation with Acosta, said that she did not believe the abuse occurred.

Dr. William Carter, a psychologist with expertise in treating sexually abused children, testified that child victims have difficulty recalling exact dates and providing time lines of abuse when questioned about events that they do not want to remember and find embarrassing to discuss. He stated that in considering a child's outcry certain questions should be asked, such as "How graphic is it?" and "[H]ow much does it fit in with her expected life experience?" Dr. Carter also testified that a child may have difficulty responding to defense counsel's questioning if the child understands that counsel is "representing or speaking up for" the person whom the child has accused, and having to answer and qualify statements to that representative "can be a very fear-invoking circumstance" for the child. Thus, Dr. Carter opined that "we have to take what they'll give us and then be as understanding as we possibly can" for what the child is unable to do.

During the defense's case, Bradshaw called A.B., his wife and R.P.'s mother, to testify. She recalled R.P. telling her that Bradshaw instructed R.P. to go into the bathroom, that R.P. and Bradshaw both went in, and that R.P. "had sucked on his private parts until stuff came out." She acknowledged that her older daughter told her about the "feet" that she had seen under the bathroom door. She also testified that R.P. told her about another incident in which Bradshaw instructed R.P. to go to the girls' bedroom at the back of the house, put a bunch of clothing on the bed, then "turn around, pull down her pants, and bend over," and "they had intercourse." R.P. did not tell her mother about it because R.P. said "that she was afraid, that Mr. Bradshaw had threatened to harm us." After hearing this, A.B. did not ask Bradshaw to move out nor did she take R.P. to the hospital

5

for an examination. Instead, she directed the girls to "bathe and get ready for bed." Ultimately, A.B. testified that she believed Bradshaw forced R.P. to perform oral sex on him and placed his "middle part on [R.P.'s] bottom," but A.B. had "no idea" how long Bradshaw had been sexually abusing R.P.

During closing argument, the State summarized its evidence against Bradshaw:

> [R.P.] came in here and she told you that this defendant placed his penis or his middle part in her bottom at least two times. Ms. Maria Chavira came in here, she told you [R.P.] told you [sic] that it happened her [sic] seventh birthday. That was in November. [R.P.] turned eight November, 2008. So we know at least it happened before her birthday in November, 2008, when he placed his middle part in her bottom. We then know on March 22nd, she told you, that he placed his middle part in her mouth. So that's at least two sexual acts; one occurring in November, 2008, the other one occurring in March of 2009, so that is a 30 day period or more.

The jury subsequently found Bradshaw guilty of continuous sexual assault of a child as charged.

During the punishment phase, the State presented an enhancement allegation for Bradshaw's 1997 sexual-assault conviction. The jury heard from twenty-year-old J.D., the victim of Bradshaw's prior offense, who testified that when she was about six years old Bradshaw sexually abused her multiple times and threatened to kill her family if she ever told anyone. The jury found the enhancement allegation true and assessed Bradshaw's punishment at fifty-three years in prison. This appeal followed.

## ANALYSIS

**Legal sufficiency of evidence on time frame of abuse**

An essential element of this prosecution for continuous sexual assault of a child is proof that Bradshaw committed two or more acts of sexual abuse against R.P. during a period of thirty or more days. *See* Tex. Penal Code Ann. § 21.02 (defining offense of continuous sexual abuse

6

of young child). However, the jury was not required to agree unanimously on which specific acts of sexual abuse were committed by Bradshaw or the exact date when those acts were committed. *See id*. § 21.02(d); *Martin v. State*, 335 S.W.3d 867, 872 (Tex. App.—Austin 2011, pet. ref'd). The acts of sexual abuse alleged in count one of the indictment were two separate acts of indecency with a child by contact, specifically, that Bradshaw touched R.P.'s anus and/or that Bradshaw caused R.P. to touch his genitals. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011). The other acts of sexual abuse alleged in count one of the indictment were four separate acts of aggravated sexual assault of a child: that Bradshaw caused R.P.'s anus to contact his sexual organ, that Bradshaw penetrated R.P.'s anus with his sexual organ, that Bradshaw caused R.P.'s mouth to contact his sexual organ, and/or that Bradshaw penetrated R.P.'s mouth with his sexual organ. *See id.* § 22.021 (West Supp. 2011). The indictment further alleged that Bradshaw committed these acts of sexual abuse between November 22, 2008, and March 22, 2009, when R.P. was under the age of fourteen and was not Bradshaw's spouse. *See id*. § 21.02.

Bradshaw's first issue challenges the legal sufficiency of the evidence supporting his conviction for continuous sexual assault of a child. Bradshaw's legal sufficiency issue contends that the State failed to prove that he committed at least two acts of sexual abuse against R.P. within a period of at least thirty days, or "on any day other than March 22, 2009." Bradshaw argues that the only evidence against him was (1) Campbell's and Chavira's testimony about R.P.'s outcry, which should have been excluded because the trial court did not conduct a reliability hearing and because their testimony was based on R.P.'s unreliable outcry statements, and (2) R.P.'s testimony, which lacked specificity about anything happening before March 22, 2009. Fairly summarized, Bradshaw's

7

argument is that this record contains no evidence that he sexually abused R.P. on any day besides March 22, 2009, and that the evidence presented against him was unreliable.

In considering a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). This standard "gives full play to the jury's responsibility to fairly resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (citing *Jackson*, 443 U.S. at 319). It is not necessary that each fact point directly and independently to the defendant's guilt as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* (citing *Hooper*, 214 S.W.3d at 13).

**1. Reliability hearing**

As part of his legal-sufficiency challenge, Bradshaw contends that Campbell's and Chavira's testimony about R.P.'s outcry should have been excluded because R.P.'s outcry was unreliable and because the trial court did not conduct a reliability hearing. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b)(2) (West Supp. 2011) (providing exception to hearsay exclusion for abuse victim's outcry to adult when court finds statement is reliable based on its time, content, and circumstances). However, Bradshaw waived any error on this issue by failing to present these objections to Campbell's and Chavira's testimony at trial. *See* Tex. R. App. P. 33.1; *see also Dorsey v. State*, No. 03-10-00039-CR, 2010 Tex. App. LEXIS 7994, at *15 (Tex. App.—Austin Sept. 30,

8

2010) (mem. op., not designated for publication), *pet. ref'd*, 2011 Tex. Crim. App. LEXIS 484 (Tex. Crim. App. Apr. 6, 2011), *cert. denied*, 132 S. Ct. 279 (U.S. 2011).

Further, under Texas Rule of Evidence 802, the trier-of-fact "is entitled to give probative value to 'inadmissible hearsay admitted without objection.'" *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (quoting *Chambers v. State*, 711 S.W.2d 240, 245-47 (Tex. Crim. App. 1986)); *see* Tex. R. Evid. 802. The Court of Criminal Appeals instructs that "once the trier of fact has weighed the probative value of unobjected-to hearsay evidence in its factfinding process," a reviewing court "cannot deny that evidence probative value or ignore it" in its sufficiency review. *Poindexter*, 153 S.W.3d at 406 (citing *Fernandez v. State*, 805 S.W.2d 451, 453-56 (Tex. Crim. App. 1991)). Because our sufficiency review requires us to consider *all* trial evidence admitted, properly or improperly, before deciding whether there was sufficient evidence to prove each element of the offense, we must consider the unobjected-to testimony from the outcry witnesses and R.P.'s outcry statements. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Villalon v. State*, 791 S.W.2d 130, 133 (Tex. Crim. App. 1990) (en banc).

### 2. Specificity of R.P.'s testimony

Bradshaw's legal-sufficiency challenge further alleges that R.P.'s testimony lacked specificity about anything happening before March 22, 2009. We note that a child who is a crime victim is not expected "to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon*, 791 S.W.2d at 134. Even so, R.P.'s outcry included specific descriptions with sensory details about Bradshaw's sexual abuse against her, which she further illustrated using anatomically correct dolls. R.P. testified not only about the March 22, 2009 bathroom incident but also about earlier bedroom incidents that occurred more than once and on different days, during

9

which Bradshaw placed his "middle part" between the "cheeks" of her bottom. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2011) (providing that conviction for sexual offense under chapter 21 of penal code "is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year" of its alleged occurrence); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd) ("The testimony of the child victim alone is sufficient to support a conviction for sexual assault."); *see also Bays v. State*, No. 06-10-00114-CR, 2011 Tex. App. LEXIS 9531, at *11 (Tex. App.—Texarkana Dec. 7, 2011, no pet.) (mem. op., not designated for publication) ("[A] child's testimony alone is also sufficient to establish the predicate offenses to prove continuous sexual assault of a child.").

At the June 2010 trial, R.P. testified that she was nine years old and that her birthday was November 23. R.P. told Chavira that at least one of these bedroom incidents occurred when she was seven years old, i.e., before her eighth birthday in November 2008. R.P. also told Acosta that the abuse "had been happening for months." To the extent that this record supports conflicting inferences about whether Bradshaw committed an act of sexual abuse against R.P. before March 22, 2009, we must presume that the jury resolved the conflicts in favor of the verdict and defer to that resolution. *Smith v. State*, 340 S.W.3d 41, 47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Viewing this evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to allow a rational jury to find that: (1) Bradshaw committed at least one act of sexual abuse against R.P. (the bathroom incident) on or about March 22, 2009; (2) Bradshaw committed at least one other act of sexual abuse against R.P. (the bedroom incident)

10

between November 2007 and November 2008 when R.P. was seven years old; and (3) the time span between these acts of sexual abuse was greater than thirty days. Because we conclude that this record allowed a rational factfinder to find beyond a reasonable doubt the essential elements of the offense of continuous sexual abuse of a young child, the evidence was legally sufficient to support Bradshaw's conviction. *See Gear*, 340 S.W. 3d at 746. We overrule Bradshaw's first issue.

**Denial of motion for mistrial**

Bradshaw's second issue argues that the trial court erred in denying his motion for mistrial "when the State or State's agents introduced testimony pertaining to [Bradshaw's] 1997 conviction," and through such errors violated Bradshaw's constitutional right to an impartial jury. Within this issue, Bradshaw presents three sub-issues complaining that: (1) the prosecutor's hypothetical reference during voir dire to "defendants who have priors" was an improper commitment question; (2) the trial court erred in denying a mistrial after the unobjected-to testimony from a police officer that Bradshaw identified himself with "a Texas offender's card"; and (3) the trial court erred in overruling Bradshaw's objection to testimony from his own witness that Bradshaw "was a registered sex offender."

However, without a proper objection to constitutional errors at trial, such errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (citing *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)); *see* Tex. R. App. P. 33.1. Preservation of error for appellate review is a systemic requirement. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). An appellate court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532). Preservation of error for appellate review requires a showing in the record that the

11

complaining party made an objection stating the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339. The issue on appeal must comport with the objection made at trial. *Clark*, 365 S.W.3d at 339 (citing *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)).

### 1. Voir dire reference to "priors"

Bradshaw first complains about the introduction of improper testimony pertaining to his 1997 conviction through the following statements from the prosecutor during voir dire:

| | |
|---|---|
| Prosecutor: | Sometimes, hypothetically, there are defendants who have priors. And if they have priors and the State proves those priors, then the penalty range goes up. |
| Defense counsel: | May we approach, Your Honor? |
| Court: | Yes. |
| (At the bench, on the record) | |
| Defense counsel: | I understand, but the fact that she was going into that. |
| Court: | It's overruled. Let's proceed. |
| Defense counsel: | Well, I'm objecting to any reference to a hypothetical that the defendant might have priors and discussing the range of punishment which might include, hypothetically or otherwise, somebody who might have priors. At this stage it's wrong and I'm going to object. And I'm going to ask the Court to, first of all, instruct the prosecutor on that. And secondly, I think this is reason for a new trial and I'm going to ask for it. |
| Court: | She can talk about the law generally. Proceed. |

12

Bradshaw's trial objection that the prosecutor's reference to priors was "wrong" does not comport with his issue on appeal that the reference to priors was an improper commitment question and violation of his right to an impartial jury. *See id.* at 340 (concluding that appellant's "badgering," "sidebar," "argumentative," "mischaracterization," and "invading the province of the jury" objections did not put trial court on notice of appellant's due-process, fair-trial complaint). Accordingly, this alleged error was not preserved for our review.

Even if the error had been preserved, the prosecutor's statements did not constitute an improper commitment question and did not violate Bradshaw's right to an impartial jury. "A commitment question is a question that commits a prospective juror to resolve or to refrain from resolving an issue a certain way after learning of a particular fact." *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011) (citing *Lydia v. State*, 109 S.W.3d 495, 498 (Tex. Crim. App. 2003)). Commitment questions often ask for a "yes" or "no" answer. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001) (setting forth three-prong test to determine whether voir dire question calls for improper commitment). In determining whether a voir dire question called for an improper commitment, we must first determine whether the particular question was in fact a commitment question and if so, whether it was an improper one. *Lee v. State*, 206 S.W.3d 620, 621 (Tex. Crim. App. 2006); *see also Roberts v. State*, No. 11-09-00175-CR, 2011 Tex. App. LEXIS 4042, at *5 (Tex. App.—Eastland May 27, 2011, no pet.) (mem. op., not designated for publication). Here, the prosecutor's statements were not questions at all, much less inquiries inviting answers indicating that the jurors would resolve or refrain from resolving an issue in this case based upon a particular fact. Because the complained-of voir dire statements did not constitute improper commitment questions, Bradshaw's second issue cannot be sustained on this basis.

13

### 2. "Texas offender's card" identification

Bradshaw also complains about the introduction of improper testimony pertaining to his 1997 conviction through Austin Police Officer Jonathan Bynum, who was asked how he identified Bradshaw and responded, "He gave me a Texas offender's card." Bradshaw's counsel failed to object to this complained-of testimony. After the officer was excused and the prosecution identified its next witness, Bradshaw's counsel moved for a mistrial, to which the court stated, "You didn't even object, counsel. . . . And so your motion for mistrial is overruled."

We review a trial court's denial of a motion for mistrial for an abuse of discretion and its ruling must be upheld if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). To be timely, a motion for mistrial must be made "as soon as the grounds for it become apparent." *Griggs* v. *State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). Here, the basis for Bradshaw's motion presented itself at the beginning of the officer's testimony, yet no objection was made as the prosecutor continued her direct examination, Bradshaw's counsel completed his cross examination, the officer was excused, and the next witness was identified. Given this record, we conclude that Bradshaw's motion for mistrial was not raised as soon as the grounds for it became apparent and was untimely; thus, the trial court did not abuse its discretion in overruling it. *See Griggs*, 213 S.W.2d at 927; *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (concluding that when party fails to seek curative instruction and requests only mistrial, scope of review is limited to whether trial court erred in denying mistrial).

Recognizing this error-preservation problem, Bradshaw argues alternatively that he may complain about the officer's testimony and the denial of the motion for mistrial despite his failure to object because the error violated his fundamental right to an impartial jury. *See*

14

Tex. R. Evid. 103(d) (permitting notice of fundamental error in criminal cases). An appellant may raise for first time on appeal claims alleging violation of certain "fundamental rights"—those that are "waivable only" and those involving denial of "absolute systemic requirements." *See Saldano v. State*, 70 S.W.3d 873, 887-88 (Tex. Crim. App. 2002). Examples of rights that are waivable-only include the right to the assistance of counsel, the right to trial by jury, and a right of appointed counsel to have ten days of trial preparation which a statute specifically made waivable-only. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003) (en banc). Examples of absolute, systemic requirements include jurisdiction of the person, jurisdiction of the subject matter, and a penal statute's being in compliance with the separation-of-powers section of the state constitution. *Id*.

The fundamental-error exception to the rule requiring preservation of error is rarely applied. *Smith v. State*, 961 S.W.2d 501, 505 (Tex. App.—San Antonio 1997, no pet.). Further, the Texas Court of Criminal Appeals has "consistently held that the failure to object waives any error in the admission of evidence tending to show an extraneous offense." *Smith v. State*, 595 S.W.2d 120, 123 (Tex. Crim. App. 1980); *Smith*, 961 S.W.2d at 506. Thus, the complaint that Officer Bynum's reference to Bradshaw's production of a Texas offender's card indicated to the jury that Bradshaw committed a prior extraneous offense was not fundamental error, and Bradshaw's failure to object to that testimony preserves nothing for our review.

We likewise reject Bradshaw's argument that he was entitled to a limiting instruction on the extraneous-offense evidence without first requesting that instruction. A trial court is not bound to give instructions that the party did not request, and the party cannot later assign as error the court's failure to give instructions that the party did not request. *Delgado v. State*, 235 S.W.3d 244,

15

248, 253 (Tex. Crim. App. 2007) (concluding that defendant's entitlement to limiting instructions on use of extraneous offenses during guilt phase depends on timely request for instructions when evidence is first introduced); *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001) ("Because appellant did not request a limiting instruction at the first opportunity, the evidence was admitted for all purposes."). Accordingly, a limiting instruction was not warranted here.

### 3. Status as "registered sex offender"

Bradshaw also complains about the introduction of improper testimony pertaining to his 1997 conviction through his own witness, Child Protective Services investigator Alyssa Wagner, who investigated allegations of abuse by Bradshaw in a February 2009 report that were eventually "ruled out." The report stated that there was no indication of sexual abuse. Bradshaw's counsel asked Wagner what type of complaint she investigated and what kind of things she discussed with R.P. Wagner testified that the report alleged physical and sexual abuse, and that her discussion included questions about domestic violence and an assessment for sexual abuse.

In a probable attempt to establish that there was no indication of sexual abuse in the report, Bradshaw's counsel asked Wagner what specific sexual-abuse allegation she investigated. Wagner apparently perceived the question as asking her to explain what allegation in the report justified her investigation of sexual abuse:

Q. And what was the specific allegation regarding sexual abuse regarding [R.P.] that you were investigating?

A. The report actually stated that there was no indication of sexual abuse, but it did state that there was knowledge that Mr. Bradshaw was a registered sex offender--

16

Bradshaw's counsel then asked to approach and complained about Wagner testifying that "there was a record that Mr. Bradshaw was a registered sex offender" when "she is a State employee and she knows she cannot testify to that." The court concluded that Wagner said what counsel was going to show anyway about the prior complaint. Bradshaw's counsel said, "No that's not and I object." After noting that Bradshaw's counsel asked his witness the question about the basis of the sexual-abuse complaint, the trial court overruled the objection.

We conclude that counsel's objection lacked the requisite specificity to preserve error. *See* Tex. R. App. P. 33.1(a)(1)(A); *Clark*, 365 S.W.3d at 339. Further, it is a well-settled principle of law that an accused cannot invite error and then complain of it. *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); *Ex parte Guerrero*, 521 S.W.2d 613, 614 (Tex. Crim. App. 1975); *see also Smith v. State*, 70 S.W.3d 848, 863 n.21 (Tex. Crim. App. 2002) (Cochran, J., concurring). The invited-error rule applies when a defendant is the "moving factor" creating the error. *Guerrero*, 521 S.W.2d at 614; *Smith*, 70 S.W.3d at 863 n. 21.

Here, defense counsel's strategy of boxing-in his witness about the basis for the sexual-abuse complaint—perhaps expecting her to repeat the report's statement that there was no indication of sexual abuse—was the moving factor creating the complained-of error. Based on the question's phrasing, Wagner could have reasonably believed that her answer was responsive to counsel's inquiry. *See Russell v. State*, 146 S.W.3d 705, 716 (Tex. App.—Texarkana 2004, pet. ref'd). Thus, we conclude that if the trial court erred in overruling the objection, Bradshaw's counsel invited the error.[3] *See id.* at 715-16 (holding that if trial court erred in denying motion for

---

[3] Additionally, any error in admitting Wagner's testimony did not affect Bradshaw's right to an impartial jury because other, similar evidence was introduced without objection through Officer Jonathan Bynum's testimony about Bradshaw's production of a Texas offender's card.

17

mistrial, counsel invited error by asking prospective jurors about what they had heard or seen about case in media, to which one responded, "I understand that he had 24 criminal priors."). We overrule Bradshaw's second issue.

## CONCLUSION

Having overruled Bradshaw's two issues, we affirm the district court's judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Henson and Rose

Affirmed

Filed:   July 26, 2012

Do Not Publish